UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ricardo Gaytan Soto and<br>Marisol Gaytan Soto, | Case No. 0:17-cv-124-JRT-KMM |
| Plaintiffs, | |
| v. | **ORDER** |
| Swift Transportation Services, LLC, and<br>Anthony Shealey, | |
| Defendants. | |

Brian E. Wojtalewicz, Wojtalewicz Law Firm, Ltd., PO Box 123, Appleton, MN, 56208, counsel for plaintiffs

Brian A. Wood, Matthew D. Sloneker, Michael Thomas Burke, William L. Davidson, Lind Jensen Sullivan & Peterson, PA, 901 Marquette Ave. S., Suite 1300, Minneapolis, MN, 55402, counsel for defendants

This case arises out of a traffic accident involving the plaintiff, Richard Gaytan Soto, and a semi-truck operated by defendant Anthony Shealey for Swift Transportation Services, LLC. Mr. Gaytan Soto and his wife, Marisol Gaytan Soto, allege that on the night of November 15, 2016, Mr. Gaytan Soto was driving his sedan on an interstate highway in Minnesota when he crashed into the trailer of Mr. Shealey's overturned semi-truck, which was blocking the roadway. Just before the accident, Mr. Shealey lost control of the semi-truck when he encountered a herd of deer in the roadway, attempted to avoid hitting them, drove into a ditch, and tried to return to the road. At that point, Mr. Shealey's vehicle overturned and the trailer completely blocked oncoming westbound traffic. [Am. Compl. ¶¶ 24–25.] The plaintiffs assert that Mr. Shealey is liable for negligence and that Swift is vicariously liable because he was acting as Swift's agent at the time of the accident. [*Id.* ¶¶ 26–35,

44–48.] The plaintiffs also allege that Swift is liable for negligently hiring, training, supervising, and retaining Mr. Shealey as a driver.[1] [*Id.* ¶¶ 36–43.]

## MOTION TO AMEND[2]

The plaintiffs have moved to amend their complaint to add claims for punitive damages. [ECF No. 85.] Through their Proposed Second Amended Complaint, the plaintiffs would add requests for punitive damages against Mr. Shealey personally and against Swift. [ECF No. 94.] Generally speaking, the plaintiffs argue that: (1) Mr. Shealey deliberately disregarded appropriate training for a professional driver of a commercial motor vehicle who encounters deer in the roadway and otherwise showed indifference to the safety of others; and (2) Swift hired Mr. Shealey and kept

---

[1] The case is in federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332.

[2] The Court bases the following factual recitation on the evidentiary materials provided by the plaintiffs in support of their motion to amend. These materials are attached to the Declaration of Brian Wojtalewicz as Exhibits A through K. [ECF No. 93.] The evidence includes: the deposition of Mr. Shealey (Exhibit A); the deposition of Christina Shealey (Exhibit B); the deposition of Swift's 30(b)(6) representative Bill Peyton, a regional safety director for the company (Exhibit C); the deposition of Swift employee Victor Malchesky (Exhibit D); the preliminary report of Michael Long, a Large Vehicle Accident Consultant, who opines that Mr. Shealey's driving conduct was below the standard for a commercial motor vehicle driver (Exhibit E); and photographs of the accident scene (Exhibits I and J). Exhibits F, G, and H to Mr. Wojtalewicz's declaration are unpublished cases provided for the Court's consideration. Finally, Exhibit K is a timeline of events concerning Mr. Shealey's work as a commercial driver. Finally, the Court has also reviewed the information submitted by the plaintiffs in Mr. Wojtalewicz's Supplemental Declaration and the attached Exhibit A, which is an early accident scene report prepared for Swift by its insurer. [ECF No. 110.] For the purposes of this ruling, the Court need not more closely parse the factual record, including the materials submitted by the defendants, because even a generous reading of the documents relied upon by the plaintiffs does not satisfy the high bar for amendment under Minn. Stat. § 549.191. Accordingly, the Court finds it unnecessary to permit the defendants to supplement the record as they requested in a May 10, 2018 letter.

him employed as a driver despite knowing that he posed a high likelihood of danger to others' safety.

### *Factual Assertions Regarding Mr. Shealey*

Mr. Shealey was an independent driver who had been contract-driving for Swift for about five months at the time of the accident. The plaintiffs assert that he showed an indifference to the safety of others because he referred to drivers of ordinary passenger vehicles with disdain, calling them "asshats." They assert that Mr. Shealey was not aware of Swift's training materials advising professional drivers never to swerve to avoid deer on a highway. Although his semi-truck carried a full load, the plaintiffs allege that Mr. Shealey showed deliberate disregard for others' safety because he was driving 68 miles per hour at the time of the incident, which exceeded the speeding policy Swift applied to its employee drivers. The plaintiffs contend that Mr. Shealey ignored commercial driver's license manuals that recommend semi-truck drivers steer their vehicles to the right in an emergency. Further, they allege that Mr. Shealey thought about staying in the ditch when he veered off the road, but instead attempted to turn back on the roadway. Plaintiffs complain that Mr. Shealey refused to agree that the accident was preventable and he did not accept fault for the crash and the rollover. They also emphasize that Mr. Shealey claimed that he never heard Mr. Gaytan Soto's vehicle crash into his truck, and he recalled, allegedly incorrectly, that there was no shoulder between the left lane and the grassy median. According to the plaintiffs, Mr. Shealey's improper conduct is further demonstrated by the fact that he did not attempt to warn oncoming vehicles of an emergency immediately after his vehicle came to rest on its side. Finally, the plaintiffs argue that amending their complaint to seek punitive damages is proper because Mr. Shealey testified that he might make the same decisions if confronted with multiple deer on the highway again.

*Allegations Against Swift*

In their negligent hiring, supervision, training, and retention claims against Swift, the plaintiffs argue that the company ignored Mr. Shealey's prior trucking violations and didn't inquire about why he left a prior trucking job after only a few months of employment. Swift also allegedly ignored evidence that Mr. Shealey suffers from post-traumatic stress disorder, and the plaintiffs assert that the company should have responded differently to evidence showing that Mr. Shealey was unemployed for several years. Swift also allegedly ignored Mr. Shealey's criminal history, which involved one assault and one trespass charge, even though Swift's safety manager considers temperament and judgment relevant factors for a truck driver.

The plaintiffs also point to conduct of Mr. Shealey during his Swift employment that they claim the company should have handled differently. The plaintiffs argue that Swift ignored the fact that Mr. Shealey had an incident involving failure to control a semi-truck during his training that took place a few months before the crash at issue. They also point to the fact that Mr. Shealey got a speeding ticket in October of 2016, and assert that Swift did respond appropriately.

Finally, the plaintiffs allege that Swift didn't adequately train Mr. Shealey. The plaintiffs argue that Mr. Shealey and his wife, Christina Shealey, who was in the truck with him on the night of the incident, stated that they were not trained by Swift on what to do upon encountering deer on the highway or how to operate the semi-truck upon going off the road. The plaintiffs further argue that amending the pleadings to seek punitive damages from Swift is appropriate because Mr. Shealey had not heard of "outrunning his headlights" as a safety concept and Swift allegedly does not require trainees or drivers to read the company's safety manual, which includes warnings relating to encountering deer on the roadway.

**LEGAL STANDARD**

Under Minnesota law, punitive damages are available when a plaintiff shows by clear and convincing evidence "that the acts of the defendant show deliberate

disregard for the rights or safety of others." Minn. Stat. § 549.20, subd. 1(a). A defendant acts with such "deliberate disregard" where the defendant:

> has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
>
> > (1) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the rights or safety of others; or
> >
> > (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b)(1)–(2).

The parties disagree whether Mr. Gaytan Soto should be allowed to amend his complaint to add a claim for punitive damages based on a related Minnesota statute: Minn. Stat. § 549.191, which is sometimes referred to as the "gatekeeping statute."[3] According to the gatekeeping statute, plaintiffs are not permitted to include a claim for punitive damages in an initial complaint. Instead, plaintiffs are required to make a prima facie evidentiary showing, by one or more affidavits, that defendants acted with

---

[3] Recent decisions reflect a disagreement among magistrate judges within the District of Minnesota regarding whether Minn. Stat. § 549.191 or Federal Rule of Civil Procedure 15 should govern a request for leave to amend to add punitive damages to a complaint. *Compare Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-cv-3183 (ADM/LIB), Doc. No. 534 (D. Minn. Mar. 8, 2018) (applying Minn. Stat. § 549.191), *with Selective Ins. Co. of S.C. v. Sela*, No. 16-cv-4077 (PJS/SER), Doc. No. 111 (D. Minn. Apr. 26, 2018) (concluding that Fed. R. Civ. P. 15 applies to requests for amendment to add claims of punitive damages), *and In re Bair Hugger Warming Devices Prods. Liab. Litig.*, No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27, 2017) (denying the motion to amend to plead punitive damages according to Fed. R. Civ. P. 15 standards); *see also Ramirez v. AMPS Staffing, Inc.*, 2018 WL 1990031, at *2–6 (D. Minn. Apr. 27, 2018) (acknowledging the split of authority but declining to resolve the issue because the plaintiff satisfied both Minn. Stat. § 549.191 and Fed. R. Civ. P. 15). Because neither party has asked the Court to apply anything other than Minn. Stat. § 549.191 in this case, the Court will examine the motion to amend to add punitive damages according to that statute.

deliberate disregard for others' rights or safety in order to add such a claim. *See id.* The prima facie showing must be clear and convincing. *See Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003). The Court reviews the evidence provided by a plaintiff as it would review a motion for a directed verdict, without making credibility rulings or considering a challenge, "by cross examination or otherwise, to the plaintiff's proof." *Id.* at 1008 n.3. This means that "[t]he trial court may not allow an amendment where the motion and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish the defendant acted with willful indifference[4]. . . ." *Id.* at 1009 (internal quotations omitted). "A mere showing of negligence is not sufficient to sustain a claim of punitive damages." *Id.* at 1008 (internal quotations and alterations omitted).

## ANALYSIS

In this case, the plaintiffs have failed to demonstrate an entitlement to plead punitive damages according to Minn. Stat. § 549.191. Despite their attempt to characterize this as a case involving deliberate disregard for the safety of others, the record does not clearly and convincingly support that contention. Specifically, the plaintiffs do not offer clear and convincing evidence that Mr. Shealey or Swift deliberately disregarded a high risk to the safety of others.

### A.     No Precedent For Punitive Damages In Similar Cases

One substantial obstacle to the plaintiffs' motion to amend is that they point to no case from the Minnesota Court of Appeals, Minnesota Supreme Court, or even the District of Minnesota applying the gatekeeping statute, where a plaintiff has been allowed to add a punitive damages claim under facts similar to those at issue here.

---

[4]     As the court noted in *Olson v. Snap, Inc.*, the Minnesota Legislature replaced the phrase "willful indifference" with "deliberate disregard" in 1990, with the newer standard being characterized "as a 'heightened' one." 29 F. Supp. 2d 1027, 1035 & n.2 (D. Minn. 1998) (quoting *Bougie v. Sibley Manor, Inc.*, 504 N.W.2d 493, 500 n.4 (Minn. App. 1993)).

They also have not cited any Minnesota appellate case upholding an award of punitive damages under similar circumstances. And the Court found no such authority in conducting its own research.

This absence of precedent to support the plaintiffs' position is central to the Court's conclusion that leave to amend under the gatekeeping statute is inappropriate. Minnesota's statutory scheme for punitive damages is designed to weed out unmeritorious punitive damages claims and requires a court do more than rubber stamp a plaintiff's allegations. *See Ulrich v. City of Crosby*, 848 F. Supp. 861, 866–67 (D. Minn. 1994) (explaining that Minnesota enacted § 549.191 "to deter certain practices in the presentment of punitive damages claims which were thought to be abusive"); *id.* at 868–69 ("[W]hen presented with a Motion for leave to assert a punitive damage claim, the function of the Court is to do more than "rubber stamp" the allegations in the Motion papers. The Court must independently ascertain whether there exists prima facie evidence that the defendant acted with a deliberate disregard of the rights or safety of others.").

At the hearing on the motion, the Court asked the plaintiffs' counsel for any authority applying Minnesota law that supports their request for leave to amend. Counsel conceded that he could not think of an auto-accident case involving negligent driving where such damages were permitted, with one readily distinguishable exception. Counsel noted that Minnesota courts have permitted recovery of punitive damages where an automobile accident is caused by a driver who is under the influence of alcohol.[5] *See Anderson v. Amundson*, 354 N.W.2d 895, 898 (Minn. Ct. App.

---

[5] In the year 2000, the Minnesota Legislature enacted a law specifically authorizing punitive damages in civil actions involving motor vehicle accidents where the accident was caused by a drunk driver. Minn. Stat. § 169A.76(a) ("In a civil action involving a motor vehicle accident, it is sufficient for the trier of fact to consider an award of punitive damages if there is evidence that the accident was caused by a driver" whose blood alcohol concentration exceeds the legal limit, who was under the influence of a controlled substance, or was under the influence of alcohol and refused

*(footnote continued on following page)*

1984) ("If the act of drinking and driving was of such a nature that a jury could find [the defendant] acted with a willful indifference to the rights or safety of others, an award of punitive damages is an appropriate sanction for the operation of a motor vehicle while under the influence of alcohol.") (internal quotations omitted). However, reliance on this authority is misplaced. There is nothing in the record that suggests Mr. Shealey was driving under the influence of alcohol or any other substance at the time of the accident at issue in this case. And the plain disregard for the safety of others evidenced by driving after drinking is certainly different from the negligence alleged against Mr. Shealey.

Because of the uniquely high bar contained in the Minnesota punitive damages statutory scheme, the Court is not persuaded by plaintiffs' citation to cases from other jurisdictions. For example, the plaintiffs cite to a North Dakota trial court decision, *Boyer v. Weist Truck Line, Inc. et al.*, No. 18-2012-CV-01621, in which plaintiffs were permitted to amend their complaint to add a claim for punitive damages against a trucking company and the driver of a commercial vehicle. [Wojtalewicz Decl., Ex. F, ECF No. 93-6.] However, the North Dakota statute at issue in that case required only a preponderance of the evidence to amend the complaint to add punitive damages. Moreover, the decision did not explain what circumstances led the court to find sufficient evidence that the driver consciously disregarded legal limits on how long and how often a driver can drive without rest. [*Id.*, Ex. F at 2 (citing 49 C.F.R. § 395.3(a)(1)–(2)).] Given the different standard, the lack of significant discussion, and the fact this case does not involve any claim that Mr. Shealey should not have been

---

(*footnote continued from previous page*)

to take a chemical test for intoxication). This statute is plainly inapplicable here because there are no facts in the record or even any allegation that Mr. Shealey was under the influence of alcohol at the time of the accident.

driving at all at the time of the accident, the plaintiffs' reliance on this case is misplaced.[6]

In sum, the Court can find no legal support for the plaintiffs' position that, in a case of alleged negligence causing a traffic accident, leave to amend should be granted pursuant to Minnesota's gatekeeping statute. Indeed, existing caselaw strongly suggests that punitive damages are not permitted in such cases. *See Olson*, 29 F. Supp. 2d at 1035 ("[T]he mere existence of negligence or of gross negligence does not rise to the level of willful indifference so as to warrant a claim for punitive damages.") (quoting *Ulrich v. City of Crosby*, 848 F. Supp. 861, 868 (D. Minn. 1994)); *see also* James Gempeler & Lindsay Mancini, *Smart Phones Dumb Driving and the Law the Criminal and Civil Consequences of Distracted Driving*, Bench & B. Minn. at 23 (November 2016) ("Currently, Minnesota courts have only allowed compensatory damages in tort automobile claims, unless the at-fault party was intoxicated as established under Minn. Stat. § 169A.76.").

**B.    No Prima Facie Showing As To Mr. Shealey**

Aside from the lack of precedent, the evidentiary record offered by the plaintiff does not transform Mr. Shealey's reaction to encountering a herd of deer on the highway into a deliberate act taken in conscious or intentional disregard of a high probability of injury to the rights or safety of others. *See* Minn. Stat. § 549.20, subd. 1(b). There is certainly no suggestion that Mr. Shealey acted with intent to injure anyone.[7] There is also no showing that Mr. Shealey had been driving erratically,

---

[6]    The authority from other jurisdictions cited by the plaintiffs also fails to convince the Court that leave to amend should be granted under the unique parameters of Minnesota's gatekeeping statute in this case. [Pls.' Mem. at 44–46 (citing several cases from other jurisdictions), ECF No. 97.]

[7]    The Court is unpersuaded that Mr. Shealey's Facebook post referring to drivers of regular passenger vehicles as "asshats" transforms his split-second reaction to deer into an intentional tort or a malicious act.

recklessly, or without adequate rest at the time he encountered the herd of deer. Instead, the record shows that Mr. Shealey was driving under the posted speed limit and that he attempted to move around the deer when he saw them because he was concerned about his own safety, his wife's safety, and the safety of his dog. [Dep. of Anthony Shealey at 110:7–12.] Even if these facts and Mr. Shealey's actions could demonstrate negligence under these circumstances, they would not permit a jury to find by clear and convincing evidence that he was willfully indifferent to the safety of other motorists.

The Court is also not persuaded by the plaintiffs' reliance on Mr. Shealey's alleged failure to warn other drivers that his trailer was blocking traffic after his vehicle overturned. As the plaintiffs acknowledge in their brief, Mr. Shealey testified that he was unconscious after his semi-truck flipped onto its side in the roadway, and came to after law enforcement was on the scene. [*See* Dep. of Anthony Shealey at 36:5–10.] In the face of this reality, his failure to warn does nothing to establish that he was willfully indifferent to other drivers' safety. Similarly, the Court is unpersuaded by the plaintiffs' curious reference to the Mr. Shealey's and Ms. Shealey's testimony that they did not hear Mr. Gaytan Soto's car hit the trailer at the time of the accident. The Court simply does not understand how this fact is relevant to any question of deliberate disregard for the safety of others.

### C. No Prima Facie Showing As To Swift

With respect to Swift, the plaintiffs have failed to show that they should be given leave to amend under the Minnesota gatekeeping statute as well. Specifically, they have not shown prima facie clear and convincing evidence that Swift was willfully indifferent to the safety of others in connection with its hiring, retention, or training of Mr. Shealey. Nor have they demonstrated an entitlement to allege a punitive damages claim based on Mr. Shealey's actions as Swift's agent because they have failed to make the requisite prima facie showing that Swift deliberately disregarded a high probability that Mr. Shealey was unfit to be a commercial motor vehicle driver. *See* Minn. Stat. § 549.20, subd. 2(2) (permitting punitive damages against a master or

principal because of the acts of an agent where "the agent was unfit and the principal deliberately disregarded a high probability that the agent was unfit").

The record does not show by prima facie clear and convincing evidence that Swift was willfully indifferent to facts indicating that Mr. Shealey posed a great risk to others on the road. For instance, the plaintiffs have not presented evidence that Shealey's driving conduct had caused repeated accidents before he was hired and that Swift was aware of such a history. Nor have the plaintiffs shown that after hiring Mr. Shealey, Swift ignored information that he was operating his semi-truck improperly.

The Court is not persuaded by the plaintiffs' suggestion that Mr. Shealey's previous assault and trespassing cases support its punitive damages case. These non-driving incidents do not establish that Swift deliberately disregarded facts showing he was unfit to operate a commercial vehicle.[8] And the plaintiffs' reference to Mr. Shealey's PTSD, a condition arising from his military service, is even less persuasive and, frankly, less respectable. There is no evidence whatsoever in this record that Mr. Shealey's mental health history contributed in any way to how he handled his nighttime encounter with deer on the road.

The plaintiffs also suggest that Swift demonstrated a deliberate disregard for the safety of others because its training was insufficient. However, the plaintiffs' own prima facie evidence demonstrates that Swift's training materials included the very

---

[8] The plaintiffs point to testimony from a Swift representative agreeing that judgment and temperament are important traits for a commercial driver and argue that Swift's decision to hire Mr. Shealey deliberately disregarded his lack of fitness for the job because of his criminal history. However, there is not any showing in this record that Mr. Shealey's previous criminal charges made him unfit to drive a semi-truck, let alone a clear and convincing one. Indeed, neither of the charges identified are even shown to relate to driving conduct. The assault case involved a confrontation with his wife's stepfather, to which Mr. Shealey pleaded guilty in 1998. [Dep. of Anthony Shealey at 99:15–100:2.] There was no information about his 1987 charge for trespassing. [Id. at 99:6–14.]

11

instruction (not swerving to avoid deer) that they contend should have been followed in this case. It is difficult to see how Swift's inclusion of that very admonition in its training materials clearly and convincingly demonstrates that Swift was willfully indifferent to the safety of others. The fact that such training was allegedly not followed here does not convert a negligence claim into one which supports punitive damages.

Ultimately, the plaintiffs point to evidence that may be relevant and helpful to their negligence claims. However, none of that evidence clearly and convincingly shows that Swift deliberately disregarded a high probability that others would be injured by Mr. Shealey when Swift hired him and allowed him to drive a semi-truck for the company.

## ORDER

**IT IS HEREBY ORDERED THAT** the plaintiffs' Motion for Complaint Amendment for Punitive Damages **[ECF No. 85]** is **DENIED**.

Date: May 14, 2018

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge
