# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RICARDO GAYTAN SOTO and<br>MARISOL GAYTAN SOTO,<br><br>                       Plaintiffs,<br><br>v.<br><br>ANTHONY SHEALEY and<br>SWIFT TRANSPORTATION CO.<br>OF ARIZONA, LLC,<br><br>                       Defendants. | Civil No. 17-124 (JRT/KMM)<br><br>**MEMORANDUM OPINION AND<br>ORDER ON DEFENDANT'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT** |

Brian E. Wojtalewicz, **WOJTALEWICZ LAW FIRM, LTD**, Post Office Box 123, Appleton, MN 56208, for plaintiffs.

Matthew D. Sloneker, **LIND JENSEN SULLIVAN & PETERSON, PA**, 901 Marquette Avenue South, Suite 1300, Minneapolis, MN 55402, for defendants.

This diversity case is a personal-injury action brought by Ricardo and Marisol Gaytan Soto against Anthony Shealey and Swift Transportation Company of Arizona, LLC ("STC"). Shealey was driving a semi truck that overturned on Interstate 90 when he tried to avoid hitting six deer. Mr. Soto was driving a sedan that collided with the overturned trailer. The Sotos assert a negligence claim against Shealey (Count I) and a vicarious-liability claim against STC for Shealey's negligence (Count III). The Sotos also assert a direct negligence claim against STC (Count II) under multiple tort theories, including negligent hiring, retention, selection, supervision, and entrustment. STC moves for

summary judgment on Count II, arguing that no reasonable jury could find STC negligent under any of those theories of tort liability. Because the Sotos neither allege nor present evidence that Shealey committed an intentional tort, the Court will grant Defendants' motion with respect to the Sotos' claims for negligent hiring and retention. But the Court will deny STC's motion with respect to the Sotos' claims for negligent selection, supervision, and entrustment because genuine disputes of material fact remain with respect to those claims.

## BACKGROUND

### I. FACTUAL BACKGROUND

Shealey was an STC employee in late 2007 and early 2008, driving an 18-wheeler semi truck. (Aff. of Michael T. Burke ("Burke Aff.") ¶ 2, Ex. 1 ("Shealey Dep.") at 14:20-15:23, May 1, 2018, Docket No. 106.) During that time, STC documented multiple violations by Shealey related to his speed and hours driven. (Burke Aff. ¶ 3, Ex. 2 ("Malchesky Dep.") at 22:5-25:5.)

In early 2016, Shealey wanted to rejoin the truck-driving workforce, and so he completed truck-driving school and renewed his commercial driver's license. (*See* Shealey Dep. at 16:3-17:11.) He rejoined STC in July 2016, and completed his training in August 2016. (*Id.* at 19:5-14.) During his training in August 2016, his truck's on-board computer system logged a "Critical Event Report," indicating that the truck's "stability control yaw system [was] triggered," which could have been caused by going around a turn too quickly or hard braking. (Malchesky Dep. at 27:19-30:22.)

During his training, Shealey was driving for STC as an employee. (Shealey Dep. at 21:11-22.) After that, Shealey purchased his own truck and became an owner-operator for STC. (*Id.* at 21:11-17; 63:14-20.) Shealey financed the truck through a company called Idealease, a subsidiary of STC. (*Id.* at 23:10-25.) Shealey's monthly payments on the loan were deducted from his STC paycheck. (*Id.*) Shealey's agreement with STC is titled "Contractor Agreement." (Burke Aff. ¶ 6, Ex. 5 at 1.) Shealey was not permitted to haul for anyone other than STC. (*Id.* ¶ 5.A.) While Shealey operated under STC's authority, STC had "exclusive possession, control and use" of the truck and trailer. (*Id.*) If Shealey failed to make on-time deliveries, STC could "temporarily take possession of the Equipment and complete the transportation." (*Id.* ¶ 5.C.) STC also had the sole authority to bar Shealey from employing anyone that STC "deem[ed] unqualified" to operate the equipment. (*Id.* ¶ 7.D.) Shealey was required to comply with STC's speed restrictions (which are different than posted speed limits on roadways). (*Id.* ¶ 5.A; *see* Shealey Dep. at 61:6-15.) STC also required Shealey to maintain an on-board electronic monitoring system (sometimes called a "Qualcomm Communication system"). (*See* Burke Aff. ¶ 6, Ex. 5 ¶ 5.D.)

Shealey's truck had a governor that limited its speed to 68 mph. (Shealey Dep. at 61:1-62:25.) STC's company trucks – i.e., not owner-operator trucks – are governed at 62 or 64 mph. (*Id.*) STC's "Driver Handbook" states that speeds of 67 to 70 mph are "excessive" and speeds above 70 mph are "flagrant." (Decl. of Brian Wojtalewicz, ¶ 5, Ex. E ("Long Rep.") at 7, Apr. 13, 2018, Docket No. 93.) STC's Driver's Handbook also warns of the danger of migrating deer. (*Id.* at 5.) It notes that there is a spike in deer-

related crashes in May and June and in October and November each year. (*Id.*) It also twice warns drivers in all-capital letters: "NEVER SWERVE!" (*Id.*) It is unclear whether STC requires its drivers to read the handbook. (Burke Aff. ¶ 8, Ex. 7 ("Peyton Dep. ") at 23:1-24:13.) STC neither tests their drivers on the handbook nor has a process for ensuring that their drivers read or maintain familiarity with the handbook. (*Id.* at 19:1-20:3.)

On October 31, 2016, Shealey got a speeding ticket in Missouri. (Shealey Dep. at 25:4-18.) Shealey claims he was going 68 mph in a 60-mph zone. (*Id.*) STC records indicate that he was going 84 mph in a 60-mph zone. (Malchesky Dep. at 20:14-21:1.) It is unknown whether STC took any action in response to Shealey's speeding ticket. (*Id.* at 21:2-12.) In the trucking industry, there is an expression called "out-running your headlights," referring to a situation in which a driver is traveling at a speed such that the minimum stopping distance for the vehicle exceeds the distance the driver can see. (*See* Peyton Dep. at 14:18-15:14.) STC trains its drivers about such situations. (*Id.*)

## II. THE ACCIDENT

Around 10:00 p.m. on November 15, 2016, Shealey was driving westbound in the right-hand lane of I-90 near Luverne, Minnesota, going 68 mph on cruise control in a 70-mph zone. (Shealey Dep. at 27:18-21; Burke Aff. ¶ 4, Ex. 3 ("Crash Report").) It was a clear, calm night, and there was little traffic. (Shealey Dep. at 26:16-22; *see also* Crash Report.) At that time, Shealey would have needed about 300 yards to stop his truck; Shealey admitted he could not see that far and that "[e]ven in daylight it's really hard" to see that far. (Shealey Dep. at 74:20-76:1.)

Shortly after 10:00 p.m., Shealey saw six deer in I-90's westbound lanes, two in the middle of the road and four near the shoulder. (*Id.* at 27:9-28:5). When he saw the deer he tapped his brakes which released the cruise control, decelerated, and flashed his lights. (*Id.* at 27:9-28:5; 32:15-33:1; Malchesky Dep. at 61:24-63:24.) Flashing the truck's headlights caused the deer to freeze and stare in his direction. (Shealey Dep. at 32:15-33:1.)

Shealey thought he could avoid a collision by moving to the left and missing the deer. (*Id.* at 29:22-30:8.) He moved over to the left-hand lane and then onto the left shoulder. (*Id.* at 27:9-28:11.) He made it around the deer without striking them, but there was a drop-off where the pavement ended, dropping down to the grassy median. (*Id.*) The truck's left tires slipped off the road and into the median, but the right tires remained on the pavement. (*Id.* at 28:6-29:7.) Shealey felt his trailer pulling sideways into the median. (*Id.* at 28:12-24; 30:14-23.) He then steered hard to get his truck and trailer back up onto the pavement, which caused the whole rig to tip onto its left side and slide onto the freeway. (*Id.* at 29:98-18, 34:22-35:1.) The cab of the truck came to a rest in the north ditch, and the overturned trailer blocked both westbound lanes of traffic. (*Id.* at 39:3-9; *see also* Crash Report.) Shortly thereafter, a vehicle driven by Mr. Soto collided with the underside of the trailer. (Crash Report.)

### III. PROCEDURAL HISTORY

The Sotos brought this action in January 2017. (Compl., Jan. 12, 2017, Docket No. 1.) The Sotos assert a direct negligence claim against Shealey, alleging that he was negligent by swerving to avoid the deer and trying to turn back up onto the road (Count I);

a direct negligence claim against STC, alleging that STC was negligent in its hiring, selection, retention, and supervision of Shealey (Count II); and a vicarious-liability claim against STC for Shealey's alleged negligence (Count III). (Am. Compl. ¶¶ 26-48, Nov. 1, 2017, Docket No. 35.) STC moves for summary judgment on Count II only, arguing that no reasonable jury could find STC negligent. (Defs.' Mot. for Partial Summ. J., May 1, 2018, Docket No. 103.)

## DISCUSSION

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Count II of the Sotos' Complaint embraces multiple tort theories of recovery: negligent hiring, negligent supervision, negligent selection, and negligent entrustment.[1] The Court will address each theory in turn after first addressing the relationship between Shealey and STC.

### A. Employee vs. Independent Contractor

Before evaluating the specific causes of action embraced by Count II of the Sotos' Amended Complaint, there is a threshold issue that the Court must address: whether Shealey was an employee or an independent contractor. To determine whether a person is an employee or an independent contractor, courts evaluate the following factors: "(1) [t]he right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge." *Boily v. Comm'r of Econ. Sec.*, 544 N.W.2d 295, 296 (Minn. 1996). "[U]nless the evidence is conclusive, the determination of whether a person is an independent contractor is a jury question." *Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975).

Here, there is more than sufficient evidence from which a reasonable jury could find that Shealey was an employee. For example, STC prohibited Shealey from hauling for

---

[1] Minnesota law does not recognize a cause of action for the tort of negligent training. *Lopez v. Minn. Vikings Football Stadium, LLC*, No. 17-1179, 2018 WL 626529, at *2 (D. Minn. Jan. 30, 2018) (citing *Johnson v. Peterson*, N.W.2d 275, 277 (Minn. Ct. App. 2007). Therefore, to the extent that the Sotos assert a claim against STC for negligent training, the Court will grant STC's motion with respect to this claim.

other companies; STC maintained exclusive possession, control and use of the equipment; STC could take possession of the truck and trailer to complete a delivery if he was late; STC had the authority to bar Shealey from employing anyone that STC deemed unqualified to operate the equipment; Shealey was required to comply with STC's speed restrictions; and STC required Shealey to maintain an on-board electronic monitoring system. Viewing the facts in the light most favorable to the Sotos, a reasonable jury could find that Shealey was an employee. *See Doe v. Swift Transp. Co.*, No. 10-899, 2017 WL 67521, at *14-15 (D. Ariz. Jan. 6, 2017). Accordingly, the Court will evaluate the causes of action embraced in Count II assuming that the jury could find that Shealey was either an employee or an independent contractor.

### B. Negligent Hiring & Retention

Minnesota law recognizes the direct-liability claims of negligent hiring and negligent retention. *Ponticas v. K.M.S. Invs.*, 331 N.W. 2d 907, 910-11 (Minn. 1983). Claims for negligent hiring and negligent retention each impose direct liability on an employer for an employee's intentional torts. *Burt v. Winona Health*, No. 16-1085, 2018 WL 1094289, at *2 (D. Minn. Feb. 28, 2018); *see also Cook v. Greyhound Lines, Inc.*, 847 F. Supp. 725, 732 (D. Minn. 1994) (requiring an intentional tort as an element of a claim for negligent hiring/retention); *M.L. v. Magnuson*, 531 N.W. 2d 849, 857 (Minn. Ct. App. 1995) (same).

Here, the Sotos do not present any evidence – or even allege – that Shealey committed an intentional tort. Thus, the Sotos cannot maintain claims against STC for

negligent hiring or negligent retention. Accordingly, the Court will grant STC's motion for summary judgment in this respect and dismiss the Sotos' claims against STC for negligent hiring and negligent retention.

### C. Negligent Selection

The Minnesota Supreme Court has not expressly adopted the tort of negligent selection. *Larson v. Wasemiller*, 738 N.W. 2d 300, 306 (Minn. 2007) (adopting the closely related tort of negligent credentialing). Thus, the Court must decide – pursuant to *Erie* – whether the Minnesota Supreme Court would recognize the tort of negligent selection of an independent contractor. The Court will conclude that it would. Moreover, there is sufficient evidence from which a jury could find STC liable for negligent selection. Accordingly, the Court will deny STC's motion for summary judgment with respect to the Sotos' claim for negligent selection.

#### 1. The Tort of Negligent Selection in Minnesota

Federal courts sitting in diversity must apply state substantive law and defer to the highest court of the state whose substantive law the federal court is applying. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). If, however, the highest state court has not addressed a question of state law, a federal court should "apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the [s]tate." *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Additionally, federal courts must "ascertain from all the available data what the state law is." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236-

37 (1940). Such "available data" includes the highest state court's recent decisions on similar issues, lower-court decisions, and other jurisdictions' precedents. *Id.*

"In determining whether Minnesota recognizes a particular cause of action," the Minnesota Supreme Court "look[s] to the common law and any statutes that might expand or restrict the common law." *Larson*, 738 N.W. 2d at 303. More precisely, "[i]n deciding whether to recognize a common law tort, [the Minnesota Supreme Court] looks to (1) whether the tort is inherent in, or the natural extension of, a well-established common law right, (2) whether the tort has been recognized in other common law states, (3) whether recognition of a cause of action will create tension with other applicable laws, and (4) whether such tension is out-weighed by the importance of the additional protections that recognition of the claim would provide to injured persons." *Id.* at 304. The Minnesota Supreme Court also "relie[s] on the Restatement of Torts to guide [its] development of tort law in areas that [it has] not previously had an opportunity to address." *Id.* at 306.

Here, the Court concludes that Minnesota Supreme Court would recognize the tort of negligent selection. First, negligent selection is inherent in, or the natural extension of, a well-established common law right. Negligent selection is the independent-contractor analogue to the tort of negligent hiring in an employee-employer relationship, the latter of which exists under Minnesota law. *See id.* at 305-06 (recognizing the tort of negligent credentialing because it is a natural extension of a hospital's duty to protect its patients from harm by third persons). Second, the overwhelming majority of states recognize the tort of negligent selection. *See Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp.*, 343 P.3d 783, 790 (Wyo. 2015) (collecting cases) ("[T]he theory of negligent hiring in the

context of independent contractors has gained broad acceptance."); *see also Larson*, 738 N.W.2d at 306 (noting "the general acceptance . . . of the tort of negligent selection of an independent contractor"). Third, recognition of the tort of negligent selection will not create tension with other applicable laws. In particular, recognizing the tort of negligent selection would not create tension with the baseline absence of liability for those who hire independent contractors . *See Fed. Ins. Co. ex rel. Lecy Const. v. Westurn Cedar Supply, Inc.*, No. 06-0614, 2008 WL 686556, at *2 (D. Minn. Mar. 13, 2008) ("[T]here are so many exceptions to this general rule that seventy years ago the Minnesota Supreme Court was already warning that 'it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions.'" (quoting *Pac. Fire Ins. v. Kenny Boiler & Mfg.*, 277 N.W. 226, 228 (Minn. 1937))).[2] Finally, § 411 of the Restatement recognizes the well-established tort of negligent selection of an independent contractor. Restatement (Second) of Torts § 411.

Therefore, the Court concludes that the Minnesota Supreme Court would recognize the tort of negligent selection of an independent contractor and incorporate § 411 of the Restatement into its common law.

---

[2] To the extent that recognition of the tort of negligent selection will create some tension with other applicable laws, that tension is outweighed by the importance of the additional protections that recognition of the tort of negligent selection would provide to injured persons.

### 2. The Sotos' Claim for Negligent Selection

Having concluded that a claim for negligent selection is a viable cause of action under Minnesota law, the Court must next decide whether there remains a genuine dispute of material fact as to whether STC is liable to the Sotos for negligent selection of Shealey.

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411.

Here, there is sufficient evidence from which a jury could find STC liable for negligent selection. For example, STC knew in 2016 that Shealey had previous speed and hours violations during his previous employment with STC. There are facts that suggest that speed might have been a factor in the accident because of the distance required to stop relative to the distance that Shealey could see. Moreover, it is unclear whether STC requires its drivers to be familiar with the Driver's Handbook; STC has no process in place for ensuring that drivers read and maintain familiarity with the handbook; and that handbook recognizes the dangers associated with migrating deer and addresses how drivers should react to deer. Furthermore, Shealey had a Critical Event Report during his training with STC before he purportedly became an independent contractor. Viewing the facts in the light most favorable to the Sotos, a reasonable jury could find that STC failed to exercise reasonable care when it selected Shealey. Accordingly, the Court will deny STC's motion for summary judgment on the Sotos' claim for negligent selection.

### D. Negligent Supervision

"[N]egligent supervision derives from the *respondeat superior* doctrine." *Cook*, 847 F. Supp. at 732. Negligent supervision occurs when an employer fails to "exercise ordinary care to prevent [the] foreseeable misconduct of" its employee. *Raleigh v. Indep. Sch. Dist. No. 625*, 275 N.W.2d 572, 576 (Minn. 1978). "[A]n employer of an independent contractor may be found negligent when it retains detailed control over a project and then fails to exercise reasonably careful supervision over that project." *Anderson v. State, Dep't of Nat. Res.*, 693 N.W.2d 181, 189 (Minn. 2005).

Here, there is sufficient evidence from which a jury could find STC liable for negligent supervision. For example, Shealey had a prior Critical Event Report and speed violations, and STC might not require its drivers to be sufficiently familiar with the Driver's Handbook. Moreover, there is sufficient evidence that STC retained detailed control over Shealey. STC prohibited Shealey from hauling for other companies; STC maintained exclusive control of the equipment and could take possession of it if he was late; STC could bar Shealey from employing anyone that STC deemed unqualified; Shealey was required to comply with STC's speed restrictions; and STC required Shealey to maintain an on-board electronic monitoring system. Viewing the facts in the light most favorable to the Sotos, a reasonable jury could find that STC failed to exercise ordinary care to prevent Shealey's foreseeable conduct and that STC retained detailed control over Shealey's performance. Accordingly, the Court will deny STC's motion for summary judgment on the Sotos' claim for negligent supervision.

### E. Negligent Entrustment

Claims for negligent entrustment impose direct liability on "[o]ne who supplies . . . a chattel for the use of another whom the supplier knows or has reason to know to be likely because of [the other's] youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm." *Axelson v. Williamson*, 324 N.W.2d 241, 243-44 (Minn. 1982) (quoting Restatement (Second) of Torts § 390). In the automobile-accident context, "negligent entrustment has been defined as a separate wrongful act when the negligence of the driver is reasonably foreseeable and the entrustor fails in the duty to take steps to prevent operation of the vehicle by the driver." *Lim v. Interstate Sys. Steel Div., Inc.*, 435 N.W.2d 830, 832 (Minn. Ct. App. 1989); *accord Breeding v. Massey*, 378 F.2d 171, 177-78 (8th Cir. 1967) (applying Arkansas law).

Here, there is sufficient evidence from which a jury could find STC liable for negligent entrustment. Assuming that Shealey was negligent on the night of the accident (a proposition on which STC does not move), the question then becomes whether Shealey's negligence was foreseeable. STC knew or had reason to know of Shealey's prior speed violations; STC knows about the danger of "outrunning" headlights; STC knows about the dangers of deer migration, including the times of year that pose an increased risk of deer-related crashes; and STC knew about Shealey's Critical Event Report. Viewing the facts in the light most favorable to the Sotos, a reasonable jury could find that Shealey's negligence, if proven, was reasonably foreseeable and that STC failed in its duty to take steps to prevent Shealey from operating his truck. Accordingly, the Court will deny STC's motion for summary judgment on the Sotos' claim for negligent entrustment.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment [Docket No. 103] is **GRANTED in part and DENIED in part** as follows:

1. Defendants' motion is **GRANTED** with respect to Plaintiffs' claims for negligent hiring, negligent retention, and negligent training embraced in Count II of the Plaintiffs' Amended Complaint [Docket No. 35].

2. Defendants' motion is **DENIED** with respect to Plaintiffs' claims for negligent selection, negligent supervision, and negligent entrustment embraced in Count II of the Plaintiffs' Amended Complaint [Docket No. 35].

DATED: August 2, 2018                  _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                                   Chief Judge
                                                   United States District Court